# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| BONNIE JEAN SAMPLES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:16-cv-01415-JEO |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Bonnie Jean Samples brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 16). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed her current DIB application in July 2013, alleging she became disabled beginning October 1, 2010. It was initially denied. An administrative law judge ("ALJ") held a hearing on January 6, 2015 (R. 12) and issued an unfavorable decision on March 20, 2015 (R. 12-20). The Appeals Council ("AC") denied Plaintiff's request for review. (R. 1).

## II. FACTS

Plaintiff was 47 years old at the time of the ALJ's decision. (R. 9, 127). She has a twelfth grade education and has worked as a phlebotomist, medical assistant, and daycare worker. (R. 57-57, 166, 168). Plaintiff alleged onset of disability on October 1, 2010, due to Chron's disease, kidney problems, and a colostomy. (R. 127, 167).

Following a hearing, applying the five-step sequential evaluation process, the ALJ found that Plaintiff had the following medically determinable impairments: irritable bowel syndrome and obesity. (R. 14). He determined that her hernia, for which she received no recent treatment, was not severe. (*Id.*) He also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) He further found Plaintiff retained the

residual functional capacity ("RFC") to perform a reduced range of light work, with various postural limitations and no exposure to hazards. (R. 15). The ALJ then found, based on testimony from a vocational expert ("VE"), that Plaintiff could perform her past relevant work and other work, including work as an assembler, photocopy operator, and housekeeper, that existed in significant numbers in the national economy. (R. 19-20). Accordingly, the ALJ found Plaintiff was not disabled. (R. 20).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

4

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20 C.F.R. § 404.1520(a)(4)). The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff argues the ALJ did not properly consider her evidence concerning

---

[2]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

5

the frequency of her colostomy bag accidents, including her testimony regarding these incidents. (Doc. 14 at 12). Specifically, Plaintiff states that "[a]ny finding by the ALJ in this case that [Plaintiff's] testimony about the frequency of her accidents is not credible should be expressly made, and supported by something more than [her] alleged failure to volunteer humiliating details about this untreatable situation during medical examinations by social security doctors and others." (Doc. 14 at 13). Supporting this argument, Plaintiff cites the testimony of the VE "that if a person similarly situated to [Plaintiff] would have to be off task 15 percent of the work week due to the need to care for her colostomy, and any accidents associated with that, there would be no jobs that she could do." (*Id*. at 12-13 (citing R. 60-61)). The Commissioner responds that substantial evidence supports the decision of the ALJ. (Doc. 17 at 10).

To properly evaluate Plaintiff's argument, it is appropriate to understand her medical condition. She was diagnosed with Cohn's Disease when she was 21. In 1988 her colon ruptured, and she had to undergo multiple surgeries. She has worn a colostomy bag since 1990. She has difficulty managing with her colostomy bag. According to her testimony at the hearing, the bag does not adhere to her body very well now, and she has to carry a diaper bag around with her because of accidents. (R. 38). She wears loose clothing because of the colostomy bag. She

6

states that because her skin is so broken down, the bag does not adhere well to her skin. (R. 39-40). She has to use "tape on top of tape" to get the colostomy bag to stay on. (R. 40). She further states that if she were sitting at a job and the colostomy bag "decide[d] that it want[ed] to come off," she would have to stop working, change clothes, and wash herself. This happens daily according to Plaintiff. (R. 53). She states that she is able to control these accidents better at home. (R. 39). She also states that if she is away from home, she cannot eat because she passes food through her system very quickly. (R. 38). She also suffers from Crohn's disease flare-ups four or five times a year. (R. 40). According to Plaintiff, each flare-up lasts three weeks to a month. (*Id.*) She experiences severe abdominal pain during a flare up that is above 10 on a ten-point scale. (R. 40-41). She cannot afford medication and does not have insurance, so she takes ibuprofen and "grits [her] teeth" during this episodes. (R. 41).

Dr. Younus Ismail performed a consultative examination of Plaintiff on August 6, 2013. The ALJ summarized Dr. Ismail's findings as follows:

> [Plaintiff] complained of abdominal pain secondary to Crohn's disease. She also complained of pain due to a hernia in the abdominal wall and bleeding off and on from the site of the colostomy. Dr. Ismail noted [Plaintiff] was not seeing any doctor on a regular because she did not have insurance. The only medication she was taking was over-the-counter Advil and Tylenol. Upon examination,

> [Plaintiff] was described as overweight at 5'4" tall and 208 pounds. [Plaintiff] was able to move from the chair to the exam table without difficulty and she was in no acute distress. [Her] abdomen was soft, nontender and nondistended. There was no localized tenderness, mass or visceromegaly noticed on the abdominal examination. Bowel sounds were audible in all four quadrants and the claimant had a midline scar, which was associated with a mild hernia. There was a scar on the left upper quadrant and one on the right upper quadrant. [Plaintiff] had a colostomy bag placed in the right lower quadrant. There was a small fistula draining just above the suprapubic area, but no evidence of any ascites. [Plaintiff's] fistula bag was filled with greenish color fluid, which was liquid in nature. There was aerosis of the skin along the side of the colostomy bag with some of the lesions oozing blood. No edema, cyanosis or clubbing was noted in the extremities during the examination. Handgrip was normal at 5/5 and [Plaintiff] had intact fine and gross manipulation. Power in the major muscle groups was normal at 5/5. There was no evidence of any muscular atrophy. She had intact pinprick and vibration sensation. Gait was normal and [Plaintiff walked without an assistive device.

(R. 16-17). Dr. Ismail determined that proper medical evaluation and treatment would be beneficial for Plaintiff along with occupational rehabilitation. He did not indicate Plaintiff had any functional limitations because of her impairments. (*Id.*)

Plaintiff presented for a new patient visit with Dr. Charles Giddens on November 13, 2014. (R. 253). Concerning this visit, the ALJ stated:

> [Plaintiff] was diagnosed with Crohn's disease and kidney disease. [She] was referred to UAB Medical Center for further evaluation of Crohn's disease and to a urologist in Fort Payne for further evaluation of her kidneys and a possible renal stone. The record does not show [she] was ever given restrictions from Dr. Giddens regarding an ability to work. In fact, records from Dr. Giddens note there was no

8

> physical disability and activities of daily living were normal. The record does not show [Plaintiff] ever sought additional follow-up treatment for either condition....

(R. 17).

After reviewing Plaintiff's hearing testimony and the medical evidence, the ALJ concluded that "the objective medical evidence does not show her limitations are severe enough to be disabling." (R. 17). Plaintiff argues that the record demonstrates the ALJ's decision is not based on substantial evidence. In support of this contention, she argues that this case is similar to *Pearman v. Astre*, 2008 WL 4767723 (M.D. Ala. Oct. 30, 2008). (Doc. 14 at 10). The Commissioner argues that her reliance on *Pearman* is misplaced. (Doc. 17 at 9).

In *Pearman*, the plaintiff testified during the administrative proceedings that the primary reason he could not work was that "sweat and any physical activity [could] cause his [colostomy] bag to become loose," creating "a biohazard for people around him and an infection risk to himself." *Id*. at *1, 3. The court noted that "[t]he ALJ did not make any credibility findings concerning this testimony, and concluded Pearman did not have any medical impairment that impeded his return to work." *Id*. at *3. The court also noted that the "[t]he DDS report concerning Pearman's physical capacity for work, adopted by the ALJ, found there were no environmental limitations, such as wetness or humidity, on Pearman's

ability to work" despite the fact that he worked outdoors as a welder in hot, humid conditions. *Id*. at *3. Noting that sweaty skin and humid conditions are factors that might impact the seal on a colostomy bag, the court reversed and remanded the case so that the ALJ could consider Pearman's credibility on this issue and the impact of the relevant climatic conditions. *Id*. (citing *Colostomy Guide*, American Cancer Society, www.cancer.org). The court also noted that the time Pearman necessarily expended tending to a loosened bag also should be considered as a non-exertional issue bearing on his ability to work. (*Id*. (citing *Wiley v. Astrue*, 2008 WL 110892, *5 n.3 (D. Kan. Jan. 7, 2008)).

*Pearman* is inapposite for at least two reasons. First, unlike *Pearman*, the ALJ in this case did evaluate Plaintiff's testimony and credibility. Specifically, he found as follows:

> [T]he objective medical evidence does not show [Plaintiff's] limitations are severe enough to be disabling. [Plaintiff] testified she did not think she could do any type of work, even sedentary work. However, the examination of Dr. Ismail revealed no physical limitation. Gait and station were described as normal and no assistive device was used for ambulation. [Plaintiff] had normal motor strength in the extremities, normal sensation and normal strength in her hands. There were no limitation[s] in fine or gross manipulation or in her ability to her use arms or legs. [Plaintiff] testified she suffered from severe abdominal pain. However, there is very little treatment. [Plaintiff] was treated for kidney stones in 2010 and 2011 and records show no complaints of severe abdominal pain or problems with her colostomy bag. Although [Plaintiff] testified she suffered from four or five flare ups a year due to Crohn's disease, the record shows no

treatment at all between 2011 and 2014. [Plaintiff] testified her pain
was so severe during a flare up it was a 10 on a scale of 0 of 10.
However, the record shows she takes nothing other than
over-the-counter Tylenol and Advil for pain relief and she has never
required ER treatment or a hospital admission. [Plaintiff] testified
she had accidents frequently and had to change clothes two or three
times during the day. She said she could not eat while she was out
because food went right through her. However, there is no mention
of such accidents during doctor visits in 2011 or during her
evaluations with Dr. Giddens in 2014.... Additionally, the record
indicates [Plaintiff] is overweight at approximately 213 pounds,
which is inconsistent with the kind of diarrhea described. [Plaintiff]
also said she was limited in the kind of food she could eat and could
not eat anything that was spicy or any raw fruits or vegetables. While
the undersigned understands this limitation may be inconvenient, it is
not disabling as it does not affect her ability to perform work activity.
[Plaintiff] also said she was limited to eating one meal a day.
However, this is inconsistent with her weight at 213 pounds and a
BMI of 37.7. It is also noted that [Plaintiff] was 208 pounds at the
time of her examination with Dr. Ismail and her weight increased to
213 pounds during her initial assessment with Dr. Giddens in
November 2014. Weight gain is inconsistent with persistent diarrhea
and eating one meal a day. Accordingly, the undersigned finds
[Plaintiff's] Crohn's disease is not disabling.[3]

(R. 17-18).

Second, to the extent Plaintiff argues that "she had accidents frequently and had to change clothes two or three times during the day" (R. 17), which impairs her ability to work, the ALJ specifically considered this testimony and then stated,

---

[3] Plaintiff also has a hernia condition which drains daily. She packs it with a wash cloth that must be regularly changed. She has had the condition for a number of years. At the time of her hearing, she was waiting to get an appointment at UAB to have someone examine her situation. (R. 54).

as just noted, "there is no mention of such accidents during doctor visits in 2011 or during her evaluations with Dr. Giddens in 2014." (*Id*.) Thus, the court finds that the ALJ did exactly what was required. He considered the claim, evaluated the record, and found her testimony to be not entirely credible. It is well-settled that this court cannot disturb such a finding of an ALJ when it is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The result is the same even if the court might resolve the dispute differently. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Therefore, '[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary;' rather '[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'") (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (citations omitted)).

To the extent Plaintiff generally asserts that her hearing testimony is supported by Dr. Ismail's observations, the court finds this to be insufficient to disturb the decision of the ALJ. In sum, Plaintiff testified that her skin is so deteriorated that her colostomy bag does not adhere well. (R. 39). This results in her having accidents requiring time away from work to address the situation, including time to clean herself and to change clothes. Plaintiff is correct that her

12

testimony is supported, in part, by Dr. Ismail's observation that she "has aerosis of the skin along the size [sic] of the colostomy bag with some of the lesions ... oozing blood." (R. 249). The ALJ did not specifically evaluate this information in his opinion. However, the court notes that Dr. Ismail did not state that these circumstances created any work-related limitations for Plaintiff.[4] Thus, this evidence, even in conjunction with Plaintiff's testimony, is not enough for this court to grant the requested relief.

To the extent that Plaintiff argues that the ALJ failed to account for the time necessary for her (Plaintiff) to deal with accidents concerning her colostomy bag in his questions to the VE, the court is not impressed. Because the ALJ did not find Plaintiff to be limited in this regard, he was not required to include such a limitation in the hypothetical presented to the VE. *See Crawford*, 363 F.3d 1161 (stating that "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). Additionally, as just mentioned, Dr. Ismail examined Plaintiff and did not find that she had any work-related limitations. Plaintiff has failed to show error on the part of the ALJ.

---

[4]Plaintiff argues that there is nothing in the doctor's notes or evaluations that indicates Plaintiff was ever asked if she had such accidents. (Doc. 14 at 12). This argument is simply that – argument. It does not demonstrate that Plaintiff was disabled. A plaintiff bears the burden of demonstrating that she is disabled. *Moore*, 405 F.3d at 1211. Her failure to raise this issue with her medical providers properly was considered by the ALJ in evaluating her credibility. It is also a reasonable basis for discounting her credibility.

To the extent Plaintiff argues that she cannot work because she has flare-ups four or five times a year that can last for several weeks, she has no insurance to see a doctor, and she "has to 'let it ride its course,'" the court finds this argument insufficient as well. The ALJ considered this testimony and, as noted above, found that the medical record shows no treatment at all between 2011 and 2014 despite the fact Plaintiff testified her pain was so severe during a flare up it was a 10 on a scale of 0 of 10. (R. at 17). Additionally, the ALJ noted that the record shows Plaintiff takes nothing other than over-the-counter Tylenol and Advil for pain relief and she has never required emergency room treatment or hospitalization. (*Id*.) The medical record evidence sufficiently undercuts Plaintiff's testimony and supports the ALJ's conclusion that her limitations are not severe enough to be disabling. While the court has no doubt that Plaintiff's condition is a very serious matter, the decision of the ALJ is supported by substantial evidence. *See Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 650 (11th Cir. 2015) ("No doubt these are still serious matters, but the medical records did not indicate any functional limitations related to those conditions.").

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the case is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 5th day of February, 2018.

                                            */s/ John E. Ott*
                                          _____
                                          **JOHN E. OTT**
                                          Chief United States Magistrate Judge